CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 22 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 7:15-CR-00042 |
| ) | |
| v. ) | By:  Michael F. Urbanski |
| ) | United States District Judge |
| CLIFTON DERON CAMPBELL ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

Before the court is defendant Clifton Campbell's motion to suppress evidence obtained during a residential search conducted on May 7, 2015. ECF No. 16. The court held an evidentiary hearing on January 29, 2016, and gave leave for the parties to file supplemental briefs addressing the testimony of Detective T.E. Lovell, the officer who executed the challenged search warrant. The court also invited counsel to address the applicability of the Fourth Circuit's decision in United States v. McKenzie-Gude, 671 F.3d 452 (4th Cir. 2011). Supplemental briefs were filed on February 5, 2016, and the matter is now ripe for decision. After careful review, the court finds that the search was executed in good faith as required by United States v. Leon, 468 U.S. 897 (1984), and will thus **DENY** Campbell's motion to suppress.

I.

On May 7, 2015, Detective Lovell and other officers from the Roanoke City Police Department went to 109 Francis Drive NW—a private residence in Roanoke, Virginia—to serve Campbell with an arrest warrant in an unrelated criminal investigation. The residence at 109 Francis Drive NW is the home of Christina Greene, who was in a relationship with Campbell at the time of his arrest. In the weeks prior to May 7, Detective Lovell regularly observed Campbell's black Chrysler 300 sedan parked in the driveway at 109 Francis Drive NW during various times of the day

and night. Based on this information, Detective Lovell concluded that Campbell was also living in the home.

At approximately 7:00 p.m. on May 7, officers approached the residence, announced their presence, and engaged Campbell in a brief exchange through the closed door. After a delay of 10-15 seconds, Campbell opened the door, stepped outside, closed the door behind him, and was arrested. A search incident to arrest found one plastic baggie filled with marijuana, several empty plastic bags, and a set of digital scales in Campbell's pockets.

On the basis of this evidence, Detective Lovell applied for a warrant to search 109 Francis Drive NW for evidence of marijuana distribution. Detective Lovell's warrant affidavit, in relevant part, states:

> On May 7th, 2015, Roanoke City Police went to the residence of 109 Frances Drive NW, Roanoke Virginia, attempting to serve a warrant on Clifton Deron Campbell. Police knocked on the door and eventually were met by Mr. Campbell who stepped from inside the residence and was immediately placed under arrest. Search incident to arrest revealed a plastic baggie containing a green leafy material, additional plastic baggies, and a set of digital scales, all in the pants pocket of Mr. Campbell. A search warrant is requested for the residence listed above to further the investigation of the crime of possession of marijuana with intent to distribute.

Ex. A, ECF No. 16-1, at 2. Notably, Detective Lovell failed to include any information about his prior surveillance of the residence and his belief that Campbell lived there. Nevertheless, after requesting that Detective Lovell correct a mistaken citation to the Code of Virginia, the magistrate approved the warrant request. Detective Lovell's subsequent search of 109 Francis Drive NW found several guns, bullets, marijuana, and other miscellaneous items.[1] Campbell was then charged with possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) and § 924(e).

---

[1] Detective Lovell signed the warrant affidavit as the affiant officer, and signed the search warrant as the executing officer. He also testified at the evidentiary hearing that he was the officer who both requested and executed the warrant.

2

Campbell now moves to suppress any evidence recovered from the residence, arguing that the warrant affidavit was "bare bones" and lacked sufficient facts to establish probable cause that evidence of marijuana distribution would be found in the home. Specifically, Campbell notes that Detective Lovell included no facts in his warrant affidavit that identified 109 Francis Drive NW as Campbell's home or otherwise connected the residence with drug dealing. Campbell also claims that the good faith doctrine is inapplicable, because the deficiencies in the warrant affidavit were so egregious that no reasonable officer could have a good faith belief that the warrant was valid.

## II.

First, the court must address Campbell's standing to challenge the search of 109 Francis Drive NW. See United States v. Jackson, 618 F. App'x 472, 474 (11th Cir. 2015), cert. denied, 136 S. Ct. 376 (2015) (suggesting that standing is a "threshold issue" in a motion to suppress). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, Fourth Amendment rights are personal and do not extend to every person present during a search. United States v. Bullard, 645 F.3d 237, 242 (4th Cir. 2011). The mere fact that the government seeks to introduce evidence against a defendant does not, by itself, convey standing to challenge the search that uncovered that evidence. United States v. Gray, 491 F.3d 138, 144 (4th Cir. 2007) ("It is axiomatic that 'suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.'") (quoting Alderman v. United States, 394 U.S. 165, 171–72 (1969)). Instead, a defendant must show he had a "legitimate expectation of privacy" in the place searched to gain standing under the Fourth Amendment. United States v. Castellanos, 716 F.3d 828, 846 (4th Cir. 2013), cert. denied, 134 S. Ct. 832 (2013). "For an expectation of privacy to be legitimate, it must be objectively reasonable; in other words, it must be an expectation 'that

3

society is prepared to recognize as reasonable.'" Bullard, 645 F.3d at 242–43 (citing Bond v. United States, 529 U.S. 334, 338 (2000)).

In his original motion, Campbell alleged no facts showing that he had a legitimate expectation of privacy in 109 Francis Drive NW other than his presence there on May 7, 2015. However, Campbell claims in his supplemental brief that he was a frequent overnight resident at the home. He notes that he kept his belongings there, had a key to the home, and "was free to come and go as he wished." ECF No. 27, at 5. Campbell also claims he had an "ongoing relationship" with Ms. Green, the current occupant of the home. Id. The government concedes that Campbell was a resident of 109 Francis Drive NW. ECF No. 28, at 3. Based on this evidence, the court is satisfied that Campbell had a legitimate expectation of privacy in the home. See Minnesota v. Olson, 495 U.S. 91, 98 (1990) (finding that an "overnight guest" has a legitimate expectation of privacy in his host's home); Gray, 491 F.3d at 144 (noting that boarders, tenants, "co-occupants," and others who "regularly reside" in a home have a legitimate expectation of privacy in that location). Campbell thus has standing to challenge the search.

### III.

Having concluded that Campbell has standing under the Fourth Amendment, the court turns next to his arguments for suppression. "The Fourth Circuit generally requires police to secure a warrant before conducting a search." United States v. Banks, 482 F.3d 733, 738 (4th Cir. 2007) (quoting Maryland v. Dyson, 527 U.S. 465, 466 (1999)). Warrants must be supported by probable cause, which "'exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found' in the place to be searched." United States v. Richardson, 607 F.3d 357, 369 (4th Cir. 2010) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Evidence seized pursuant to an invalid warrant is subject to suppression under the exclusionary rule, absent operation of the good faith exception described

4

in United States v. Leon, 468 U.S. 897 (1984). See United States v. Andrews, 577 F.3d 231, 235 (4th Cir. 2009).

Campbell challenges both the validity of the search warrant and the applicability of the good faith exception. At the outset, the court seriously doubts that the search warrant in this case was valid. While a magistrate's decision to approve a warrant application is entitled to great deference, the magistrate still must have a "substantial basis" to find a "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238–39 (1983); see also United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). In this case, the warrant application included few—if any—facts connecting 109 Francis Drive NW with marijuana distribution. Cf. United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993) ("Where no evidence connects the drug activity to the residence, the . . . warrant [is] defective."). However, because it was objectively reasonable for Detective Lovell to rely on the search warrant, this court need not finally decide whether the magistrate erred in approving the warrant application. See Andrews, 577 F.3d at 235; United States v. Perez, 393 F.3d 457, 460 (4th Cir. 2004). Instead, the court will proceed immediately to the good faith analysis.[2]

### A. Leon Good Faith Exception

"Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the 'officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" Lalor, 996 F.2d at 1583 (quoting Leon, 468 U.S. at 926). The good faith exception is rooted in the underlying purpose of the exclusionary rule, which is to deter police misconduct. Andrews, 577 F.3d at 235–37. As the Fourth Circuit has recognized, "the deterrence objective [of the exclusionary rule] 'is not achieved through the suppression of evidence obtained by

---

[2] While the government did not concede the issue of probable cause, it focused primarily on the "easier question" of the Leon good faith exception. See ECF No. 22, at 1, 9–13; ECF No. 28, at 1–10.

5

an officer acting with objective good faith within the scope of a search warrant issue by a magistrate.'" Id. at 235 (quoting Perez, 393 at 461). "[I]t is the magistrate's responsibility to determine whether probable causes exists, and officers cannot be expected to second-guess that determination in close cases." United States v. Mowatt, 513 F.3d 395, 404 (4th Cir. 2008), abrogated on other grounds by Kentucky v. King, 563 U.S. 452 (2011). Accordingly, "under Leon's good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" Perez, 393 F.3d at 461 (citing Leon, 468 U.S. at 922).

In most cases, "a warrant issued by a magistrate . . . suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Id. at 461. However, courts recognize four circumstances in which an officer's reliance on a warrant is not "objectively reasonable:"

- First, where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.

- Second, where the magistrate acted as a rubber stamp for the officers and so wholly abandoned his detached and neutral judicial role.

- Third, where a supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

- Fourth, where a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid.

6

United States v. Williams, 548 F.3d 311, 317–18 (4th Cir. 2008) (internal citations, quotation marks, and brackets omitted). "In any of these four circumstances . . . the Leon good faith exception does not apply." Perez, 393 F.3d at 461.

In his motion to suppress, Campbell does not explicitly invoke any of the four circumstances in which the Leon good faith exception does not apply. Instead, he generally argues that this was a "bare bones" affidavit[3] and that the magistrate "rubber stamped" the warrant request. ECF No. 16, at 3–5. Following the lead of other courts in the Fourth Circuit, this court construes these allegations as invoking the third Leon exclusion. See United States v. Wellman, 663 F.3d 224, 229 (4th Cir. 2011) (holding that "an allegation that a search warrant application contained grossly insufficient information is best analyzed under the third Leon exclusion"); Perez, 393 F.3d at 461 (noting that district court's rejection of a "bare bones" affidavit argument was premised on the third circumstance discussed in Leon); United States v. Johnson, 4 F. App'x 169, 174 n.1 (4th Cir. 2001) (noting that an affidavit is typically "bare bones" because "it falls into Leon's third exception").

### B. Third Leon Exclusion

Under the third Leon exception, a warrant affidavit must be so lacking in "indicia of probable cause" that no reasonable officer could believe probable cause existed to search 109 Francis Drive NW. This standard demands even less from the government than the "substantial

---

[3] A "bare bones" affidavit is "one that contains wholly conclusory statements which lack the facts and circumstances from which a magistrate can independently determine probable cause." United States v. Wilhelm, 80 F.3d 116, 123 (4th Cir. 1996) (internal citations omitted). The classic example is an affidavit that "merely recites the conclusions of others—usually a confidential informant—without corroboration or independent investigation of the facts alleged." United States v. Johnson, 4 F. App'x 169, 172 (4th Cir. 2001). As no confidential informant was used in this case, Detective Lovell's affidavit is not "bare bones" as that term is often used. However, as noted above, the claim that an affidavit is "bare bones" can also be tantamount to a claim that the third exclusion to Leon applies, i.e. that the warrant affidavit was so thin "as to preclude any reasonable belief in the validity of the search warrant that the affidavit supported." United States v. W., 520 F.3d 604, 610 (6th Cir. 2008). As such, the court will analyze Campbell's claims through the lens of the third exception to Leon.

basis threshold" required to prove that probable cause existed in the first place. United States v. Bynum, 293 F.3d 192, 196 (4th Cir. 2002); see also Williams, 548 F.3d at 318 n.6 (distinguishing between the "substantial basis" and "indicia of probable cause" standards). Moreover, the good faith analysis is objective, and must be "confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances." Herring v. United States, 555 U.S. 135, 145 (2009) (internal citation and quotation marks omitted). To determine "objective reasonableness," a court looks to the information included in the warrant affidavit and any "uncontroverted facts known to the officers but inadvertently not disclosed to the magistrate." United States v. McKenzie-Gude, 671 F.3d 452, 459 (4th Cir. 2011); United States v. Brown, 481 F. App'x 853, 855 (4th Cir. 2012) ("We may consider information conveyed to the magistrate but not contained in the affidavit as well as uncontroverted facts known to the officer but inadvertently not presented to the magistrate.")

Campbell concedes that his possession of digital scales, one baggie of marijuana, and several empty baggies provided probable cause to believe that he was engaged in marijuana distribution. See ECF No. 16, at 4; see also Williams, 548 F.3d at 316 (noting that digital scales are "commonly used in drug distribution"). However, he argues that no reasonably well-trained officer could rely in good faith on Detective Lovell's warrant affidavit because that affidavit never linked 109 Francis Drive NW with evidence of marijuana distribution. Campbell notes that that the affidavit merely recited that he had been arrested outside the residence with drug distribution paraphernalia on his person. Nothing explicitly identified the location as Campbell's home, or otherwise connected the home with drug dealing. Campbell claims these few facts fail to establish even the minimal nexus between 109 Francis Drive NW and evidence of marijuana dealing required by Leon. The court disagrees.

8

As Campbell notes, residential searches require some evidence linking a residence with criminal activity. United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993). Thus, the key issue is not whether a defendant is suspected of a particular crime, but whether "it is reasonable to believe that the items to be seized will be found in the placed searched." Id. at 1582. However, the Fourth Circuit has "long held that 'the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.'" United States v. Moore, 477 F. App'x 102, 105 (4th Cir. 2012) (quoting United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988)). "Thus, when factually supported, a sufficient nexus between a defendant's residence and criminal activity may be established even when the affidavit in support of the search warrant does not contain factual information directly linking the items sought to the residence." Id. at 105 (citing United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005)).

Accordingly, the Fourth Circuit has upheld residential search warrants where there is "(1) evidence of the suspects' involvement in drug trafficking combined with (2) the reasonable suspicion (whether explicitly articulated by the applying officer or implicitly arrived at by the magistrate judge) that drug traffickers store drug-related evidence in their home." Williams, 548 F.3d at 319; see also McKenzie-Gude, 671 F.3d at 459 n.2 (noting the "reasonable inference[ ] that people store contraband in their homes"). As noted above, Campbell concedes that his possession of drugs, digital scales, and empty baggies is sufficient to provide probable cause to believe he was trafficking marijuana. Thus, the operative question is whether an officer could "harbor[ ] an objectively reasonable belief" that 109 Francis Drive NW was Campbell's residence, such that he could reasonably suspect evidence of marijuana trafficking would be found there. McKenzie-Gude, 671 F.3d at 458.

9

On its face, Detective Lovell's warrant affidavit offers scant evidence that Campbell lived at the home. The document states only that: (1) Campbell was present inside 109 Francis Drive NW immediately before his arrest; (2) Campbell answered the door and stepped outside when police knocked; and (3) Campbell had drug distribution paraphernalia on his person when arrested on the porch. The affidavit does not identify 109 Francis Drive NW as Campbell's residence, nor does it allege any connection between Campbell and that location other than his presence there on May 7, 2015. Moreover, there are no facts connecting 109 Francis Drive NW with any prior criminal activity, and there is no evidence that drug activity had been observed at the home before May 7, 2015. On these few facts alone, a reasonable officer would find little evidence establishing a nexus between drug trafficking and 109 Francis Drive NW.

However, the good faith analysis is not limited to facts that appear on the face of the warrant affidavit. Instead, the Fourth Circuit authorizes courts to "look outside the four corners of a deficient affidavit" and consider any "uncontroverted facts known to the officers but inadvertently not disclosed to the magistrate." McKenzie-Gude, 671 F.3d at 459–60. As the Fourth Circuit stated in McKenzie-Gude:

> Leon instructs that the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "*all of the circumstances.*" 468 U.S. at 922 n.23, 104 S. Ct. 3405 (emphasis added); accord Herring v. United States, 555 U.S. 135, 145, 129 S. Ct. 695, 172 L.Ed.2d 496 (2009); United States v. DeQuasie, 373 F.3d 509, 520 (4th Cir. 2004). For this reason, we have consistently rejected the notion that reviewing courts may not look outside the four corners of a deficient affidavit when determining, in light of all the circumstances, whether an officer's reliance on the issuing warrant was objectively reasonable. . . . Refusing to consider such information risks the anomalous result of suppressing evidence "obtained pursuant to a warrant supported by the affidavit of an officer, who, in fact, possesses probable cause, but inadvertently omits some information from his affidavit." Bynum, 293 F.3d at 199.

Id. at 459 (emphasis in original). The Fourth Circuit continued:

10

> Moreover, contrary to the suggestion of McKenzie–Gude, we do not believe that a court abandons the objective inquiry required by Leon when it considers the uncontroverted *facts known* to the officer, which he has inadvertently failed to disclose to the magistrate. Of course, Leon requires an assessment of an officer's objective reasonableness that cannot "turn on the subjective good faith of individual officers." Leon, 468 U.S. at 919 n. 20, 104 S. Ct. 3405. But this limitation simply precludes courts from "inquir[ing] into the subjective *beliefs* of law enforcement officers." Id. at 922 n.23, 104 S. Ct. 3405 (emphasis added). It does not require courts to disregard specific, uncontroverted facts known to the officers.

Id. at 460 (emphasis in the original). Under this reasoning, courts must ignore an officer's subjective beliefs and conclusions, but may consider "specific, uncontroverted facts known to [those] officers" when determining whether a reasonably well-trained officer would have known that a search was invalid despite the magistrate's approval of the warrant request. Id.

In this case, Detective Lovell possessed additional information showing that Campbell lived at 109 Francis Drive NW that was not included in his warrant affidavit. This evidence included: (1) that Christina Greene, Campbell's girlfriend, rented the residence at 109 Francis Drive NW; (2) that Detective Lovell surveilled the residence between January 2015 and May 7, 2015 as part of an unrelated criminal investigation; (3) that Campbell drove a black Chrysler 300 sedan with a known license plate; and (4) that Detective Lovell regularly observed Campbell's black Chrysler 300 sedan parked in the driveway at 109 Francis Drive NW during various times of the day and night. During the evidentiary hearing on January 29, 2016, Detective Lovell testified that he knew these facts at the time he applied for the search warrant on May 7, 2015.[4]

---

[4] Campbell does not challenge the validity of Detective Lovell's testimony about the prior surveillance of 109 Francis Drive NW, nor could he as Campbell's supplemental brief cites a May 11, 2015 incident report filed by Detective Lovell a few days after Campbell's arrest which mirrors Lovell's later testimony on January 29, 2016. ECF No. 27, at 2 n.1.

11

These facts, in conjunction with those cited in the warrant affidavit, link Campbell and 109 Francis Drive NW with evidence of marijuana distribution.[5] Detective Lovell's testimony described a multi-week surveillance operation that identified 109 Francis Drive NW as Campbell's residence. Armed with that information, it was reasonable for an officer to infer that evidence of drug distribution could be found inside 109 Francis Drive NW once Campbell was arrested with evidence of drug trafficking on his person, especially since Campbell was arrested only seconds after he exited his home. See McKenzie-Gude, 671 F.3d at 459–61 (applying Leon good faith exception where officers relied in good faith on undisclosed evidence "linking the criminal activity, the defendant, and the target residence"); United States v. Harris, 215 F. App'x 262, 272 (4th Cir. 2007) (applying Leon where officers "overlooked" the need to state that a suspect lived at the target address because it was "easy to read the affidavit and not realize that the officers failed to connect the final dots specifically linking [the suspect] to the apartment"); see also United States v. Castro, No. 5:06-CR-00054-1, 2009 WL 1406404, at *5 (W.D. Va. May 19, 2009) (applying Leon good faith exception to a residential search where the warrant affidavit described how officers followed a suspect to his home after a drug sale). Therefore, because Detective Lovell possessed uncontroverted evidence linking Campbell with 109 Francis Drive NW, the warrant's failure to explicitly connect Campbell with that location does not render Detective Lovell's reliance on that warrant objectively unreasonable.

For his part, Campbell urges the court to ignore the evidence from Detective Lovell's January 29 testimony. Campbell claims McKenzie-Gude and its progeny do not apply because Detective Lovell did not "rely" on any additional facts when executing the search warrant and did not "inadvertently" omit any facts from the warrant affidavit. In support, Campbell notes that

---

[5] The government emphasizes several other facts known to Detective Lovell that, in its mind, also support application of the good faith exception. This includes evidence that Campbell delayed opening the door to the home for 10-15 seconds after police identified themselves, and quickly closed the door behind him after stepping outside to be arrested. In the government's view, these facts support "the clear inference . . . that Campbell had something to hide and keep from the police." ECF No. 28, at 6. Because the court rests its decisions on other facts known to Detective Lovell, it need not address what inferences, if any, a reasonable officer could draw from this behavior.

12

Detective Lovell testified that he relied exclusively on his warrant affidavit when executing the search because he believed Campbell's possession of drugs, digital scales, and plastic baggies was sufficient, on its own, to establish probable cause to search the residence. Likewise, Detective Lovell conceded that he omitted information about his prior surveillance of 109 Francis Drive NW because he did not think such information was necessary to establish probable case. Based on this testimony, Campbell believes the good faith analysis in his case falls outside McKenzie-Gude and can be based only on the facts in Detective Lovell's warrant affidavit. The court again disagrees.

First, Campbell misstates the holding from McKenzie-Gude. In that case, the Fourth Circuit addressed "whether, in determining an officer's good faith, a court may properly look beyond the facts stated in the affidavit and consider uncontroverted facts known to the officers but inadvertently not disclosed to the magistrate." 671 F.3d at 459. The Fourth Circuit answered in the affirmative. Thus, the relevant question is what facts were known to the executing officer at the time of the search, not what conclusions the officer drew from those facts. In this case, it is undisputed that Detective Lovell—the officer who executed the search warrant—knew additional facts linking Campbell to the home at 109 Francis Drive NW. These uncontroverted facts were not included in the warrant affidavit, but they were known at the time Detective Lovell submitted his affidavit to the magistrate. Therefore, under McKenzie-Gude, a court may consider these omitted facts to determine if Detective Lovell's reliance on the issuing warrant was objectively reasonable.

Campbell finds it significant that Detective Lovell testified that he saw no need to consider other information connecting Campbell to the residence because he believed his affidavit was sufficient as written. On the basis of this testimony, Campbell invites the court to analyze the reasonableness of Detective Lovell's subjective conclusions about the evidence in this case. This the court cannot do.

13

An officer's subjective beliefs have no role in the good faith analysis. See Leon, 468 U.S. at 922 n.23 (noting that courts should not journey "into the minds of [specific] police officers"). Instead, the Leon inquiry is objective—it focuses only on the "actual, uncontroverted facts . . . known to an [executing] officer" and asks whether, in light of those facts, "a reasonably well-trained officer would have known that the search was illegal." McKenzie-Gude, 671 F.3d at 459 (citing Leon, 468 U.S. at 922 n.23). Detective Lovell's personal conclusions about probable cause are irrelevant, because his subjective evaluation of the warrant affidavit does not answer the question of whether a reasonably-well trained officer, in light of all the circumstances, would know that this warrant was invalid. See United States v. Hodson, 543 F.3d 286, 292–93 (6th Cir. 2008) (noting that the Leon good faith analysis focuses not on a specific officer, but rather on the "faceless, nameless, reasonably well-trained officer in the field"); United States v. Hodge, 246 F.3d 301, 309 (3d Cir. 2001) (holding that Leon "requires objectively, not subjectively, reasonable conduct"). Here, the government offers uncontroverted facts connecting Campbell and 109 Francis Drive NW with evidence of drug trafficking. Some facts were included in the warrant affidavit. Others were inadvertently omitted from that affidavit, but were known to the executing officer at the time of the search. Armed with both sets of facts, a well-trained officer would have reasonable grounds to believe that the warrant in this case was valid.

Moreover, the language in McKenzie-Gude is not as narrow as Campbell suggests. To be sure, the Fourth Circuit suggested that only "inadvertently" omitted facts may be considered in the good faith analysis. See 671 F.3d at 459–60. Campbell reads "inadvertently" as synonymous only with "unintentionally" or "accidentally," and argues that Detective Lovell purposely omitted details about Campbell's connection with the residence because he believed additional facts were unnecessary. As such, Campbell claims Detective Lovell's omission of these facts was not "inadvertent" as required by McKenzie-Gude. But the definition of "inadvertently" is much

14

broader than Campbell acknowledges. "Inadvertent" omissions can also be "inattentive" or "negligent" omissions. Inadvertent, Oxford English Dictionary, http://www.oed.com/view/Entry/93041 (last visited on February 17, 2016). Similarly, facts "inadvertently" omitted can also be "heedlessly" or "carelessly" omitted. Id. In this case, Detective Lovell omitted additional information connecting Campbell with 109 Francis Drive NW because he believed his affidavit was sufficient to establish probable cause. That belief was likely in error. But Detective Lovell's error—however careless or negligent it may have been—does not make his omission any less "inadvertent" under McKenzie-Gude.

For these reasons, the court finds McKenzie-Gude directly on point. As was true in that case, the warrant affidavit here fails to link Campbell and his alleged criminal activity with the residence at 109 Francis Drive NW. Other than Campbell's presence at that location on the day of his arrest, nothing in the warrant affidavit identifies the home as Campbell's residence or otherwise connects the location with prior incidents of drug dealing. However, Detective Lovell—who both filled out the warrant affidavit and executed the search warrant—possessed other, uncontroverted facts identifying the home as Campbell's current residence. These facts, when considered alongside those cited in the warrant affidavit, render Detective Lovell's reliance on the warrant objectively reasonable. Therefore, the Leon good faith exception operates to prevent suppression in this case.[6]

---

[6] In his initial brief, Campbell relied heavily on the divided decision in United States v. McPhearson, 469 F.3d 519 (6th Cir. 2006), which affirmed the suppression of evidence recovered in a residential search. In that case, the Sixth Circuit found that Leon did not apply because the warrant affidavit failed to establish the "minimal nexus" between the defendant's home and drug trafficking. Id. at 526. While McPhearson's facts are somewhat similar to those found here, the court finds it distinguishable. First, the Sixth Circuit rested its ruling primarily on the "absence of any facts connecting [the suspect] with drug trafficking." Id. at 525. The officers in McPhearson discovered cocaine in the suspect's pockets when he was arrested outside his home, and sought a warrant for the home on that basis alone. Id. at 526. No other evidence indicative of drug trafficking—i.e. baggies or digital scales—were found and the officers never alleged that the suspect was engaged in drug dealing. Id.; see also id. 524 n.3. As noted above, the officers in this case discovered digital scales, one baggie of marijuana, and several empty baggies in Campbell's pockets immediately after he exited his home. Detective Lovell's warrant affidavit also states that he was investigating Campbell for "the crime of possession of marijuana with intent to distribute." Ex. A, ECF No. 16-1, at 2. Had Campbell been arrested carrying a single baggie of marijuana, McPhearson may well control this case. However, even Campbell concedes that his possession of digital scales, one baggie of marijuana, and several empty baggies provides probable cause to believe that he was engaged in drug trafficking. Thus, unlike in McPhearson, there is evidence in this case connecting the suspect

15

This conclusion is further reinforced by the underlying goals of the exclusionary rule. Courts have long recognized that exclusion is appropriate only when it deters future violations of the Fourth Amendment. Davis v. United States, 131 S. Ct. 2419, 2432 (2011) ("[W]e have said time and again that the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement.") (emphasis in original). Therefore, exclusion is never automatic, but a "last resort" applied only where it "results in appreciable deterrence" of police misconduct. Herring v. United States, 555 U.S. 135, 140 (2009) (internal citations omitted). As the Supreme Court recently stated:

> The basic insight of the Leon line of cases is that the deterrence benefits of exclusion "vary with the culpability of the law enforcement conduct" at issue. Herring, 555 U.S. at 143, 129 S. Ct. 695. When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. Id. at 144, 129 S. Ct. 695. But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, Leon, supra, at 909, 104 S. Ct. 3405 (internal quotation marks omitted), or when their conduct involves only simple, "isolated" negligence, Herring, supra, at 137, 129 S. Ct. 695, the "'deterrence rationale loses much of its force,'" and exclusion cannot "pay its way." See Leon, supra, at 919, 908, n.6, 104 S. Ct. 3405 (quoting United States v. Peltier, 422 U.S. 531, 539, 95 S. Ct. 2313, 45 L.Ed.2d 374 (1975)).

Davis, 131 S. Ct. at 2427–28 (internal brackets omitted).

Here, Campbell can point to no deliberate, reckless, or grossly negligent disregard for his Fourth Amendment rights. Nor can he point to any unlawful police conduct. Instead, the facts show that the police were investigating an unrelated crime in which Campbell was allegedly involved.

---

with drug distribution. Second, at least one subsequent Sixth Circuit decision limited McPhearson's potentially broad language on probable cause. McPhearson suggested that officers can infer that a suspect has stored evidence of drug distribution in his home only when there is uncontroverted evidence that the suspect was a "known drug dealer." 469 F.3d at 524–25. However, a later Sixth Circuit panel qualified this language, noting that officers can establish probable cause to search a suspect's home for drugs if they "sufficiently connect" that suspect to drug trafficking, even without evidence that the suspect was a known drug dealer. United States v. Taylor, 471 F. App'x 499, 513 (6th Cir. 2012). In this case, it was reasonable to infer that Campbell was engaged in drug trafficking, which in turn invokes the "reasonable suspicion (whether explicitly articulated by the applying officer or implicitly arrived at by the magistrate judge) that drug traffickers store drug-related evidence in their home." United States v. Williams, 548 F.3d 311, 319 (4th Cir. 2008). Armed with evidence that 109 Francis Drive NW was Campbell's home, Detective Lovell's reliance on the warrant in this case was objectively reasonable.

16

As part of that investigation, officers observed Campbell's movements to and from 109 Francis Drive NW and later arrested him at that location. As part of the arrest, officers found drug trafficking paraphernalia in Campbell's pockets. Once evidence of drug distribution was discovered, Detective Lovell followed proper procedures to obtain a search warrant for Campbell's home, which Campbell had exited immediately before his arrest.

To be sure, Detective Lovell failed to include information in his warrant affidavit explicitly connecting Campbell with 109 Francis Drive NW. But there is no evidence this omission was an attempt to mislead the magistrate or to otherwise influence his decision to issue the warrant. Instead, Detective Lovell held the honest—albeit mistaken—belief that his affidavit was sufficient as written. Once the magistrate approved the warrant request, Detective Lovell had no reason to "second guess" the magistrate's decision, especially since he was both the affiant officer and the executing officer for the search warrant. See McKenzie-Gude, 671 F.3d at 461 (noting that officers who both apply for and execute a search warrant later deemed invalid have less reason to question the magistrate's approval because they "merely failed to recognize their own inadvertent omission"). Detective Lovell's mistake is no more than an isolated incident of police negligence, and any "marginal deterrence" afforded by the exclusion cannot "pay its way." Id. (citing Herring, 555 U.S. at 148); see also Leon, 468 U.S. at 921 ("Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."). Therefore, as was true in McKenzie-Gude, "this is not one of those 'unusual cases in which exclusion will further the purposes of the exclusionary rule.'" 671 F.3d at 461 (citing Leon, 468 U.S. at 918).

### C. Remaining Leon Exclusions

As noted above, Campbell's motion to suppress is best analyzed under the third exception described in Leon. However, his argument for suppression fares no better under the remaining

17

three circumstances in which the good faith exception does not apply. The first and fourth circumstances are clearly irrelevant. Campbell does not allege that Detective Lovell made false statements in his affidavit, nor does he allege that Detective Lovell somehow misled the magistrate by omitting information about the prior surveillance of 109 Francis Drive NW. United States v. Grant, No. 3:09-CR-362, 2009 WL 4884531, at *2 (E.D. Va. Dec. 16, 2009) (finding the first circumstance inapplicable where a defendant offered no evidence that "information provided in the officer's affidavit was false or in reckless disregard of the truth"). Likewise, Campbell does not claim that the warrant fails to identify the place to be searched or the items to be seized. United States v. Cisneros–Mayoral, 129 F. App'x 27, 39 (4th Cir. 2005) (noting that the fourth circumstance requires that the warrant fail to "provide the executing officer with sufficient indication of the task required of him").

The second circumstance is a closer question, as Campbell cites the magistrate's "rubber stamp" of the warrant request. However, the second exclusion is typically reserved for situations where a magistrate wholly abandons his role as a "detached and neutral" judicial officer and instead acts as an agent of the police. United States v. Doyle, 650 F.3d 460, 469 (4th Cir. 2011) (internal citations omitted). The classic example is that found in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 321–27 (1979), where the Town Justice accompanied police on a raid and personally examined the evidence to determine if it could be seized. No such facts are alleged here.[7] In fact, both parties

---

[7] To be sure, some cases suggest that a magistrate could "abandon his judicial role" under the second exclusion when he issues a warrant based on a bare bones affidavit. See Doyle, 650 F.3d at 470 (suggesting that claims of a bare bones affidavit could be analyzed under the second Leon exclusion); United States v. Williams, 548 F.3d 311, 319 n.7 (4th Cir. 2008) (noting that district court analyzed claims of bare bones affidavits under the second Leon exclusion). However, as stated above, most courts in the Fourth Circuit hold that general arguments about "bare bones affidavits" and "rubber stamping" are best analyzed under the third Leon exclusion. See, e.g., United States v. Andrews, 577 F.3d 231, 240 (4th Cir. 2009) (stating that a "rubber stamp" challenge to judicial neutrality "[e]ssentially . . . recasts [a defendant's] argument that no officer could reasonably rely on the warrant because there was an insufficient basis for a probable cause finding"); United States v. Johnson, 4 F. App'x 169, 173 n.1 (4th Cir. 2001) ("A 'bare bones' affidavit is usually insufficient because it falls into Leon's third exception."); see also United States v. Wilhelm, 80 F.3d 116, 121–23 (4th Cir. 1996) (invoking the third Leon exclusion to find that a warrant affidavit was fatally bare bones and that the magistrate merely "rubber stamped" the warrant application).

18

agree that the magistrate reviewed the warrant application in its entirety, and read it closely enough to discover that Detective Lovell cited the wrong criminal statute. That the magistrate's review was relatively brief—seven minutes, by Detective Lovell's estimate—does not show that the magistrate "wholly abandoned" his role as a judicial officer. See United States v. Gary, 420 F. Supp. 2d 470, 486 (E.D. Va. 2006), aff'd, 528 F.3d 324 (4th Cir. 2008) (noting that the second Leon exclusion cannot apply "[w]here the magistrate takes time to read the affidavit or requires additional details in the affidavit before signing it"). Therefore, because Detective Lovell executed the search in good faith and Campbell cannot show that any of the four circumstances precluding application of the Leon exception apply, his motion to suppress must fail.

## IV.

For the reasons set forth above, the court will **DENY** Campbell's motion to suppress, ECF No. 16.

An appropriate Order will be entered.

Entered: 02-22-2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge