## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Criminal Action No. 7:15-cr-42** |
| **v.** | ) | |
| | ) | |
| **CLIFTON DERON CAMPBELL,** | ) | By: Michael F. Urbanski |
| | ) | Chief United States District Judge |
| Defendant | ) | |

### MEMORANDUM OPINION

On August 20, 2019, defendant Clifton Deron Campbell, proceeding pro se, filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. ECF No. 87. The government filed a motion to dismiss Campbell's petition on January 10, 2020, ECF No. 94, to which Campbell responded on February 4, 2020. ECF No. 96. On June 9, 2020, the Federal Public Defender entered an appearance on Campbell's behalf and filed a supplemental brief in support of his motion. ECF Nos. 98, 99, 100. On June 12, 2020, the court ordered the parties to file additional briefing on Campbell's claim brought pursuant to Rehaif v. United States, 139 S.Ct. 2191 (2019) and the parties did so. ECF Nos. 101, 102, 108, 109, 111. For the reasons stated below, the court will **GRANT** the government's motion and **DENY** Campbell's petition.

### I. BACKGROUND

On May 28, 2015, Campbell was indicted on one count of possession of a firearm after he had previously been convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. § 922(g)(1) and 924(e). ECF No. 1. On March 7, 2016, he entered into a plea agreement in which he agreed to plead guilty to the charge. The

government agreed to recommend a sentence of 180 months if Campbell were found to be an Armed Career Criminal. Plea Agrm't, ECF No. 39 at 1-3. He pled guilty the same day. ECF Nos. 36-38. On July 18, 2016, Campbell was sentenced to 180 months, with the term to run concurrently with a 24-month sentence imposed in United States v. Campbell, 7:02-cr-66 (W.D. Va. July 18, 2016), based on revocation of supervised release in that case.

Campbell filed a direct appeal in the instant case, arguing that the court erred when it denied a pre-trial motion to suppress evidence. The Fourth Circuit affirmed the conviction on February 2, 2017. ECF Nos. 58, 59. Campbell sought a writ of certiorari to the United States Supreme Court, which was denied on October 10, 2017. ECF Nos. 61, 62.

Campbell raises three arguments in support of his § 2255 motion. First, he asserts that his conviction should be vacated because of the participation of Officer Craig Frye in the investigation and prosecution of his case. Second, he contends that he is entitled to relief under Rehaif v. United States, 139 S.Ct. 2191 (2019). Third, he argues that he is innocent of the Armed Career Criminal enhancement filed his case, relying on the decision in Johnson v. United States, 135 S.Ct. 2551 (2015).

## II. DISCUSSION

### A. 28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petition alleges a sentencing error that is neither constitutional nor

jurisdictional, "a district court lacks authority to review it unless it amounts to a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

**B.  Standard of Review**

"The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rule 12 of the Rules Governing Section 2255 Proceedings. The court may dismiss a § 2255 motion without a hearing when the motion, any attached exhibits, and the record of prior proceedings conclusively show that the moving party is not entitled to relief. United States v. Renrick, No. 6:11-CR-00338-JMC-16, 2019 WL 4140934, *2 (D.S.C. Aug. 30, 2019) (citing 28 U.S.C. § 2255(b)).

"When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). The court does not weigh the evidence but reviews the facts in the light most favorable to the petitioner and determines whether there is a genuine issue of fact. Lewis v. United States, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *3 (E.D.N.C. May 20, 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Permissible inferences must still be within the range of reasonable probability, ... and

it is the duty of the court to [grant summary judgment] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (citing Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted)).

**(1) Participation of Craig Frye**

In April 2018, two years after Campbell was convicted and sentenced, the government filed a motion seeking disclosure of grand jury materials and potential impeachment materials regarding Officer Frye. The court granted the motion on May 16, 2018. ECF No. 80. Campbell's motion recounts some of the information disclosed about Frye, as does the government's motion to dismiss.

In short, starting in 2004 and continuing through 2017, Campbell claims that Frye engaged in dishonest practices multiple times while on the job, including conducting investigations outside the scope of standard patrol-level enforcement and circumventing department procedures, being untruthful during testimony in a drug prosecution, failing to disclose to a United States Attorney, who was preparing a case for trial and had posed the standard Giglio[1] questions to Frye, that he had previously been arrested and charged with felony larceny,[2] and failing to disclose various internal investigations into allegations of misconduct on his part. In addition, Frye was disciplined for making racially insensitive remarks about African Americans, making sexually inappropriate comments to a female co-worker, and for sexual harassment of another female co-worker.

---

[1] Giglio v. United States, 405 U.S. 150 (1972).
[2] The charge was later dismissed and expunged from Frye's record.

4

Based on Frye's behavior, a Roanoke County Assistant Commonwealth's Attorney decided not to sponsor Frye's testimony in any further cases unless the testimony was corroborated by other evidence. Also, the United States Attorney determined that Frye would no longer be permitted to testify as a government witness.

Given the above revelations about Frye, Campbell argues that the indictment in his case should be dismissed and his conviction and sentence vacated. He claims that Frye led the investigation that resulted in his arrest and that his conviction should be vacated because Frye was known to target African Americans and also to lie on applications for warrants. ECF No. 87 at 15. However, a review of the record indicates that while Frye was involved in the search of Campbell's home, there were several officers present and Frye's report of the search was supported by another report filed at the time. The fact that Frye was involved in the search, without more, is insufficient to warrant relief under § 2255.

According to a Report of Investigation prepared by Frye and authorized by Resident Agent in Charge James J. Panos, III, on May 7, 2015, Roanoke Police Officer Mike Maddy arrested Campbell at his girlfriend's residence on an outstanding felony arrest warrant for shooting into an occupied vehicle. Maddy searched Campbell and found a baggie of what appeared to be marijuana, seven empty baggies, and a set of digital scales in Campbell's pants pocket. Maddy transported Campbell to Roanoke City jail for processing. Detective Teddy Lovell obtained a search warrant for the residence, which was rented by Campbell's girlfriend. Items found in the search included two firearms, one of which was loaded with four rounds, ammunition, miscellaneous firearms accessories, plastic bags containing marijuana, clothing

that appeared to fit Campbell, and mail with his name on it. Rep't of Incident, ECF No. 94-1 at 1-2.

One of the firearms, a Ruger revolver, was found in a laundry basket that also contained the plastic bags containing marijuana. Id. at 2. It showed no trace results past January 6, 1975 and had not been listed as stolen. The other firearm, a Smith and Wesson pistol, belonged to Campbell's girlfriend, who had bought it the previous day. Id.

An incident report prepared by Officer Maddy on May 7, 2015 listed the items seized from Campbell's person when he was arrested and also from Campbell's girlfriend's apartment when it was searched. The report was supplemented by Detective Lovell and both accounts were consistent with Frye's account. Incident Rep't, ECF No. 94-1 at 3-9.

Frye prepared an additional report, also authorized by Panos, in which he stated that he asked Special Agent Keeth Teehan, a firearms expert, to examine the Ruger revolver. Teehan determined that the revolver was a firearm and, because it was not manufactured in the Commonwealth of Virginia, surmised that it must have been shipped or transferred in interstate commerce, foreign commerce, or both. Rep't of Investigation, ECF No. 94-2.

In another report prepared by Frye, he stated that he had spoken with officers in the United States Probation Office for the Western District of Virginia about Campbell. The probation office supervisor confirmed that another officer supervised Campbell following his 2002 felony convictions for possession with intent to distribute marijuana and possession of marijuana and that Campbell was incarcerated pending revocation of supervised release. The supervising officer provided Frye with copies of documents from Campbell's file, including his biographical information and a copy of Campbell's conditions of post-release supervision

signed by him in which he acknowledged he was not allowed to handle a firearm. Rep't of Investigation, ECF Nos. 94-3, 94-4, and 94-5.

On the day Campbell entered into the plea agreement, he and his attorney also signed an agreed statement of facts that was filed the same day. Agreed Stmt. of Facts, ECF No. 37. It was stated that Campbell's arrest stemmed from a warrant charging him with a shooting that occurred in Roanoke in January 2015. Based on surveillance, Detective Lovell believed that Campbell resided at the residence with his girlfriend, Christina Green. The statement of facts described the circumstances surrounding Campbell's arrest, the search of his person, the obtaining of a search warrant for the residence, the execution of the search warrant, and a description of the items discovered in the search. Id. at 1-2.

It was further stated that Green testified under oath to the grand jury that she lived at the residence with her two young children and that while Campbell did not live there, he stayed there a majority of the time. The firearm found in the laundry basket did not belong to Green and she had observed Campbell with it in the waistband of his pants approximately one hour before he was arrested. The FBI had examined the revolver and found Campbell's fingerprint on it. Id. at 2.

Campbell argues that his conviction, based on his guilty plea, should be vacated because Frye was involved in securing the charges against him. "[A] guilty plea is a grave and solemn act to be accepted only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). Because guilty pleas waive the constitutional right to a trial, they "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id. "The longstanding test for determining the

validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Thus, to withdraw a guilty plea as involuntary, a defendant must show "(1) 'some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea' and (2) 'the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.'" United States v. Fisher, 711 F.3d 460, 465 (4th Cir. 2013) (quoting Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006)).

### (a) Impermissible Conduct

Campbell has not provided any link between Frye's misconduct described above and the firearm charge to which Campbell pled guilty. Without doing so, he cannot show that he is entitled to relief. See, e.g., Lewis, 2015 WL 2401514 at *8-9 (denying defendant's motion where an officer's falsification of an affidavit in a different case lacked any connection to the defendant's case); Byrd v. State, 221 A.3d 1085, 1098 (Md. Ct. Spec. App. 2019) (denying a petition for writ of error coram nobis where the state failed to advise the defendant of previously unknown dishonest conduct in other cases by two officers involved in the defendant's case).

In United States v. Robinson, 627 F.3d 941, 949 (4th Cir. 2010), a defendant was tried and later discovered that officers who testified in his trial had engaged in misconduct in other trials. The defendant argued that he was entitled to a new trial, but the court denied relief, reasoning that "the officers' misconduct, while serious, did not relate to Robinson's case or to the truth-finding function of the criminal proceeding. We thus reiterate our reluctance to order

retrials because of subsequently discovered impeachment evidence." See also Runyon v. United States, 228 F.Supp.3d 569, 590-592 (E.D. Va. Jan. 19, 2017), vacated and remanded in part on other grounds by United States v. Runyon, 994 F.3d 192 (4th Cir. 2021) (finding petitioner failed to state a claim for ineffective assistance of counsel when he alleged that his attorney hired an investigator who later was found to have engaged in a bribery scheme because petitioner could only theorize that the investigator may have filed a false report or taken a bribe, but could show no evidence of dishonesty in his own case); and Basham v. United States, 109 F.Supp.3d 753, 863-864 (D.S.C. 2013) (finding that newly discovered evidence that showed that sheriff who testified against defendant was later convicted of corruption and obstruction of justice did not serve as basis for new trial where sheriff was one of eighty-nine witnesses who testified against defendant, his testimony was not critical to the prosecution, and the other evidence against the defendant was overwhelming).

In Campbell's case, he points to no action taken by Frye that could be described as "impermissible conduct" as contemplated by Fisher. In that case, an officer gave false testimony in support of a search warrant. During the ensuing search, officers discovered the evidence that formed the basis of the charge against the defendant. The district court acknowledged that if the defendant had known of the officer's false testimony and had challenged the search, "there likely would have been no prosecution at all." Fisher, 711 F.3d at 467. The court described the officer's conduct as "gross police misconduct [which] goes to the heart of the prosecution's case." Id. at 466.

Nothing similar has occurred in Campbell's case. Campbell does not allege that Frye gave false testimony or made a false report. Frye did not make "unfulfilled or unfulfillable

promises" to induce a guilty plea. Fisher, 711 F.3d at 465 (quoting Brady, 397 U.S. at 755). Nor did he make plain and inexcusable misrepresentations not anchored to any permissible litigation strategy. Id. (citing Ferrara, 456 F.3d at 293). Campbell does not allege that Frye threatened him, promised to discontinue improper harassment, misrepresented the circumstances, or bribed Campbell to induce his plea. See Brady, 397 U.S. at 755. Campbell described no action by Frye that could be described as "egregious," "extraordinary," or "highly uncommon" misconduct that goes "to the heart of the prosecution's case." Fisher, 711 F.3d at 466. Accordingly, because Campbell points to no actions taken by Frye that could be described as inexcusable conduct, he cannot satisfy the first part of the test for showing that his plea was involuntary.

### (b) Materiality

Even if Campbell could identify impermissible conduct that satisfied the first prong of Fisher, the court finds that Frye's conduct was not material to Campbell's decision to plead guilty. To meet the materiality prong, a defendant must show "a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial." Fisher, 711 F.3d at 467 (quoting Ferrara, 456 F.3d at 294). But a defendant may not satisfy this prong merely by stating that his decision would have been different. Rather, courts are to employ an "objective approach to determining reasonable probability." Id.

A defendant's decision to plead guilty is often "heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." Id. at 466. Campbell faced a minimum statutory sentence of 180 months and a maximum of life. The sentencing range under the

guidelines was 151 to 188 months, but the statutory minimum made the sentencing range 180-188 months. PSR, ECF No. 53 at ¶¶ 49-50. Had he proceeded to trial instead of pleading guilty, he likely would not have received a reduction in his sentence for acceptance of responsibility, which would have increased his guidelines range to 210 to 262 months. Id. at ¶ 51. Entering into the plea agreement resulted in a sentence of 180 months.

Although Frye participated in the execution of the search warrant, another officer, Detective Teddy Lovell, prepared the affidavit to obtain the search warrant. Rep't of Investigation prepared by Frye, ECF No. 94-1 at 1. Also, during the execution of the search warrant there were at least four other officers present. Incident Rep't prepared by officer Michael Maddy, ECF No. 94-1 at 6-7.  In addition, Campbell's girlfriend testified to the grand jury that he stayed at her residence a majority of the time and she had seen the gun in the waistband of his pants within an hour of his arrest. Agreed Statement of Facts, ECF No. 37 at 2. Also, the FBI found his fingerprint on the gun. Id. Thus, if Campbell had known about Frye's misconduct in other cases and believed he could challenge Frye's testimony at trial, he still faced the testimony of four other law enforcement officers about the items found during the search, his girlfriend's testimony that he had been carrying the gun an hour before, and the fact that his fingerprint was found on the gun. He also would have made himself vulnerable to a significantly lengthier sentence had he gone to trial. Based on the foregoing, the court does not find that it is objectively reasonable to conclude that had Campbell known of Frye's misconduct he would have chosen to go to trial rather than plead guilty.

### (c) Evidentiary Hearing

The court has examined the record and concluded that Campbell has not alleged facts to indicate the necessity of an evidentiary hearing. See 28 U.S.C. § 2255(b) (providing that a court need not grant a hearing on a § 2255 motion if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); see also Jones v. Polk, 401 F.3d 257, 269 (4th Cir. 2005) (quoting Fullwood v. Lee, 290 F.3d 663, 681 & n. 7 (4th Cir. 2002)) ("[A] federal habeas court 'is permitted to hold [an evidentiary] hearing only if the petitioner alleges additional facts that, if true, would entitle him to relief.' . . . Thus, an evidentiary hearing is an instrument to test the truth of facts already alleged in the habeas petition.")

Based on the foregoing, the court finds that Campbell has not stated facts that show he is entitled to withdraw his guilty plea based on Frye's participation in the investigation of his case. Thus, his claim for relief based on his allegations related to Frye is **DENIED**.

### (2) Rehaif Claim

Campbell also argues that he is entitled to have his sentence vacated under the holding in Rehaif v. United States, 139 S.Ct. 2191 (2019). In Rehaif, the Court examined 18 U.S.C. § 922(g), which prohibits nine categories of persons from possessing a firearm, including aliens illegally or unlawfully in the United States and persons, like Campbell, who have been convicted in any court of a crime punishable by imprisonment for a term exceeding one year. A knowing violation of § 922(g) is punishable by up to ten years incarceration. 18 U.S.C. §§ 922(g) and 924(c). A person who violates § 922(g) and has three previous convictions for a

violent felony, serious drug offense, or both, is subject to a mandatory minimum sentence of 15 years. 18 U.S.C. § 924(e).

The defendant in Rehaif was in the United States on a nonimmigrant student visa to attend university. Id. at 2194. After he received poor grades, the university suspended him and told him that his "immigration status" would be terminated unless he transferred to a different university or left the country. Id. Rehaif stayed in the United States and went to a firing range, where he shot two firearms. The government learned that he had done so and prosecuted him under 18 U.S.C. §§ 922(g) and 924(a)(2). At the trial, the court instructed the jury, over Rehaif's objection, that the United States was not required to prove that Rehaif knew that he was illegally or unlawfully in the United States. Id.

On appeal, the Eleventh Circuit Court of Appeals affirmed the conviction and the Supreme Court granted certiorari to consider whether, in prosecutions under §§ 922(g) and 924(c), the government must prove that a defendant knew of his status as a person barred from possessing a firearm. The Court reversed, holding that because § 922(g) specifies that a defendant may be convicted only if he "knowingly violates" § 922(g), "Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." Rehaif, 139 S.Ct. at 2196. Therefore, the Court concluded that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Id. at 2100.

Campbell argues that the indictment in his case should be dismissed under Rehaif because the government failed to prove the four elements of the offense and failed to submit

the four elements to the Grand Jury to obtain the indictment. Motion, ECF No. 87 at 15-16.

Because Campbell was proceeding pro se when he made this argument, it is presumed that he

is arguing that the government did not plead or prove that he knowingly violated the statute.

The government responded that because Campbell did not raise the constitutional

attack on his § 922(g) conviction in any of his direct proceedings or to the Fourth Circuit

Court of Appeals, he procedurally defaulted the claim.[3]

> In order to collaterally attack a conviction or sentence based upon errors that
> could have been but were not pursued on direct appeal, the movant must show
> cause and actual prejudice resulting from the errors of which he complains or
> he must demonstrate that a miscarriage of justice would result from the refusal
> of the court to entertain the collateral attack. See United States v. Frady, 456
> U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); United States v.
> Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). The existence of cause for a
> procedural default must turn on something external to the defense, such as the
> novelty of the claim or a denial of effective assistance of counsel. See Murray v.
> Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). And, in order
> to demonstrate that a miscarriage of justice would result from the refusal of the
> court to entertain the collateral attack, a movant must show actual innocence by
> clear and convincing evidence. See id. at 496, 106 S.Ct. 2639.

United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999). See also Bousley v. United

States, 523 U.S. 614, 621-22 (1998) and United States v. Fugit, 703 F.3d 248, 253-54 (4th Cir.

2012) (finding procedural default may be excused when a person attacking his conviction

shows that he is actually innocent, or shows cause for the default and prejudice resulting from

it).

The government argued that Campbell could not show that he was actually innocent

of the offense because evidence showed he knew he was a convicted felon at the time he

---

[3] The government conceded that Rehaif is retroactively applicable on collateral review in a first § 2255
motion. Mot. to Dismiss, ECF No. 94 at 20; Resp. in Opp'n, ECF No. 109 at 2.

unlawfully possessed the firearm giving rise to his § 922(g) conviction. The government further argued that Campbell could not show cause for not raising the claim earlier because the argument he could have made about the knowledge requirement was not so novel as to be unavailable. Resp. in Opp'n, ECF No. 109. Additionally, the government argued that even if he could show cause for the procedural default, Campbell could not show prejudice because he could not show a reasonable probability that, but for the error, he would not have entered the guilty plea, citing United States v. Dominguez-Benitez, 542 U.S. 74 (2004).

In Dominguez-Benitez, a defendant sought to withdraw his guilty plea as a consequence of the district court's failure to give a warning required by Federal Rule of Criminal Procedure 11. Because the error was not preserved by timely objection, the plain-error standard set out in Federal Rule of Criminal Procedure 52(b) applied, which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." The Court found that to prove an effect on substantial rights, the defendant had to show "a reasonable probability that, but for the error, he would not have entered the plea." Id. at 76. Here, the government asserted Campbell could not make that showing because the record contained evidence that he knew he was a convicted felon prohibited from using or carrying a firearm and thus, his decision whether to plead guilty would not have been affected by the new rule announced in Rehaif.

In response, Campbell argued that the court committed a structural error, rather than a plain error, when it did not inform Campbell of all of the elements of his offense and consequently, that he did not need to show actual innocence or prejudice. Rather, Campbell argued prejudice was presumed from a structural error. The alleged structural error was the

court's failure to inform Campbell that the government had to prove that he knew his status as a convicted felon prohibited him from possessing a firearm. Campbell cited United States v. Gary, 954 F.3d 194, 201 (4th Cir. 2020), where the Fourth Circuit held that Rehaif error was a structural error that resulted in a fundamentally unfair outcome. However, the Supreme Court recently overruled Gary in Greer v. United States, 141 S.Ct. 2090, 2100 (2021).[4]

Greer addressed whether a Rehaif error is "plain" or "structural." The plain-error test requires a showing that (1) there was an error; (2) the error was plain; and (3) the error affected the defendant's "substantial rights," which generally means that there must be "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Greer, 141 S.Ct. at 2096 (citing Rule 52(b) of the Federal Rules of Criminal Procedure, and Rosales-Mireles v. United States, 138 S.Ct. 1897, 1904-05 (2018)). The Court explained structural errors this way:

> Structural errors are errors that affect the "entire conduct of the [proceeding] from beginning to end." [Arizona v. Fulminante, 499 U.S. 279, 309 (1991)]. The "highly exceptional" category of structural errors includes, for example, the "denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt." United States v. Davila, 569 U.S. 597, 611, 133 S.Ct. 2139, 186 L.Ed.2d 139 (2013).
>
> By contrast, discrete defects in the criminal process—such as the omission of a single element from jury instructions or the omission of a required warning from a Rule 11 plea colloquy—are not structural because they do not "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." [Neder v United States, 527 U.S. at 9 (1999)] (omission of element from jury instructions); see also Dominguez Benitez, 542 U.S. at 81, n. 6, 124 S.Ct. 2333 (omission of Rule 11 warning from plea colloquy).

---

[4] Greer was a consolidated appeal of two circuit court cases, Greer v. United States, 735 F. App'x 886 (11th Cir. 2019) (per curiam) and United States v. Gary, 954 F.3d 194, 201 (4th Cir. 2020).

Id. at 2100.

Gary argued that Rehaif errors are structural and require automatic vacatur in every case without regard to whether a defendant can otherwise satisfy the plain-error test. Id. at 2099. The Court rejected that argument, noting that a constitutional error does not automatically require reversal of a conviction. Greer, 141 S.Ct. at 2099 (citing Fulminante, 499 U.S. at 306). Only in very few cases has the Court found that an error is structural and subject to automatic reversal on appeal. Id. at 2099-2100 (citing Neder, 527 U.S. at 8). The Court went on to find that Rehaif errors "fit comfortably within the 'general rule' that 'a constitutional error does not automatically require reversal of a conviction.'" Id. at 2100 (quoting Fulminante, 499 U.S. at 306, 111 S.Ct. 1246). Rather, a defendant must satisfy the ordinary plain-error test. Id.

> The bottom line of these two cases is straightforward. In felon-in-possession cases, a Rehaif error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon. When a defendant advances such an argument or representation on appeal, the court must determine whether the defendant has carried the burden of showing a "reasonable probability" that the outcome of the district court proceeding would have been different.

Id., 141 S. Ct. at 2100.

Greer addressed cases on direct appeal. Here, in the context of collateral review, Campbell cannot overcome procedural default of his claim based on plain error because he cannot show prejudice, i.e., a reasonable probability that, but for the error, the outcome of the proceeding would have been different. Dominguez-Benitez, 542 U.S. at 76. Campbell has not asserted that he was unaware of his status as a person who had been convicted of a crime punishable by imprisonment for a term exceeding one year. Nor has he asserted that if he

17

knew that the government had to prove he knew his status that he would not have pled guilty but would have gone to trial instead.

Moreover, it is clear from the record that Campbell knew his status as a convicted felon. In <u>United States v. Campbell</u>, 7:02-cr-66 (W.D. Va. filed June 18, 2002), Campbell was convicted on one count of possession of marijuana and one count of possession with intent to distribute in excess of five grams of cocaine base. Jmt., ECF No. 108-2 at 1. He was sentenced to 121 months on the cocaine base charge and 90 days on the marijuana charge, to run concurrently, to be followed by an eight-year term of supervised release. <u>Id.</u> at 2. On August 2, 2011, when Campbell was released from custody and began his term of supervised release, he signed an acknowledgment that he understood the conditions of supervised release, including a prohibition on possessing a firearm. <u>Id.</u> at 4; ECF No. 108-1. Accordingly, based on the holding in <u>Greer</u> and the fact that it is clear that Campbell understood that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, the court finds that he is not entitled to relief based on <u>Rehaif</u>.

**(3) <u>Johnson</u> Claim**

Campbell also argues that his sentence should be vacated based on <u>Johnson v United States</u>, 576 U.S. 2551 (2015). <u>Johnson</u> held that the residual clause of the Armed Career Criminal Act (ACCA) was unconstitutionally vague. <u>Id.</u> at 597. <u>Johnson</u> provides relief to defendants whose statutory sentence depends on convictions that qualify as violent offenses under the residual clause of 18 U.S.C. § 924(e)(2)(B). <u>United States v. Gabourel</u>, 192 F.Supp.3d 667, 670 (W.D. Va. 2016). Campbell argues that his prior convictions for attempted robbery and unlawful wounding could not be used as a predicate offenses under the ACCA because

they fell under the residual clause. He also argues, without citing to authority, that his Virginia cocaine distribution conviction cannot count as a predicate offense because it includes the terms "offer, give, and purchase" and thus is overbroad.

However, Campbell's claim fails for three reasons. First, it is untimely. Campbell's conviction became final on October 10, 2017, when the Supreme Court denied certiorari. ECF No. 62. The statute of limitations ran one year later, or on October 10, 2018. 28 U.S.C. § 2255(f). Campbell did not file his § 2255 motion until August 20, 2019, well outside the limitations period. Campbell has not argued that he is entitled to equitable tolling of the deadline and no reason to grant equitable tolling appears on the record. Thus, his § 2255 petition is untimely with respect to his Johnson claim and subject to dismissal.

Second, Campbell's challenge to his sentence based on Johnson is procedurally defaulted because he did not raise it at sentencing or on direct appeal. See Mikalajunas, 186 F.3d 490 at 492–93 (discussing cause and prejudice following procedural default). Campbell has not alleged cause or prejudice for the default and has not asserted that he is actually innocent. Therefore, he cannot overcome the procedural default of his Johnson claim.

Finally, Campbell is not entitled to relief on the merits of his claim. Although Johnson found the residual clause of the ACCA to be constitutionally vague, it did not affect the other provisions of 18 U.S.C. § 924(e). A person can be sentenced under the ACCA if he violates § 922(g) and has three previous convictions for a violent felony, a serious drug offense, or both. 18 U.S.C. § 924(e)(1). In addition to his conviction for attempted robbery, Campbell had a conviction for distribution of cocaine for which he received a sentence of four years, and his federal conviction for possession with intent to distribute in excess of five grams of cocaine

19

base for which he received a sentence of 121 months. PSR, ECF No. 53, ¶¶ 16, 25, 26. Also, although he argues that his conviction for unlawful wounding in violation of VA Code § 18.2-51 falls under the residual clause, his argument is foreclosed by United States v. Jenkins, 719 F. App'x 241 (4th Cir. 2018). In Jenkins, the Fourth Circuit looked at VA Code § 18.2-51 in the context of the definition of violent felony set out in 18 U.S.C. § 924(e)(2)(B)(i) where a violent felony is defined as "[having] as an element the use, attempted use, or threatened use of physical force against the person of another." Jenkins, 719 F. App'x at 243. The court analyzed the unlawful wounding statute and concluded that "the minimum conduct necessary to sustain a conviction for unlawful wounding requires the attempted or threatened use of physical force under the ACCA's force clause." Id. at 246. Therefore, Campbell's argument that his conviction for unlawful wounding cannot count as a predicate offense under the ACCA is unavailing. The record shows that Campbell had two previous convictions for a serious drug offense and a conviction for a violent felony. Thus, he is not entitled to relief under Johnson.

### III. CONCLUSION

Finding that the allegations in Campbell's complaint, taken in the light most favorable to him, do not warrant vacatur of his guilty plea, the court **GRANTS** the government's motion to dismiss, ECF No. 94, and **DENIES** Campbell's § 2255 petition, ECF No. 87. Because Campbell has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

An appropriate order will be entered.

Entered:   08/02/2021

Michael F. Urbanski
Chief United States District Judge